Number 24-1654, Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Capital LLC, at all. At this time, would counsel for the appellants please introduce themselves on the record to begin. Good afternoon, Judge Helpe. Eamon Joyce, on behalf of the funds. May I reserve four minutes for rebuttal, please? You may. Thank you. May it please the Court. The District Court's dismissal of the funds claims and the declaratory judgment decision that resulted should be reversed. I want to try to cover three things. Start with mootness, move over to failure to state a claim, and to borrow a term from Judge Rickleman earlier, zero in on some of these statements. I want to begin with so-called mootness, which is really an invention of a Southern District of New York judge 44 years ago that other courts without much care have latched onto. This Court should reject that path. The Avnet Doctrine is not grounded in constitutional mootness in any way. Look, that's made plain by NANO, which dismisses not under 12b-1, but dismisses for failure to state a claim under 12b-6, quote, with prejudice. Rather, the Avnet Doctrine flies in the face of how the Supreme Court has always understood mootness. One, there's certainly more relief that the funds could have been awarded through litigation of Section 13 and Section 14 claims. That's what Moak and cases like FICRE that we cite on page 6 of our reply bring out. Two, the result here is the opposite of the ordinary rule that voluntary cessation does not moot a case. Again, look at FICRE on that point. Defendants here openly said, J-642, that they were making an amended disclosure to moot what Ocean Capital considers to be clearly unmeritorious disclosure claims. Let me ask, because here the mootness is, or you're challenging the mootness, but the curative information is provided. It's like a one-shot deal. This is not one of these mootness issues that can rise again or rise again. Here the information was provided, albeit late. So why is that moot? I disagree with the factual premise, Your Honor. Start with the fact that as to most of these defendants, there's no Schedule 13 at all. So we don't know any of their holdings, let alone when they acquired them. Point two, this is not a situation in which in any way, and this goes to my point on this isn't all the relief that we could have been awarded. They've disclosed our allegation. They haven't disclosed what the actual facts are. And in that way, right, when you look at cases that get to these claims on the merits, whether that's this Court's decision in Lampert, whether that's the D.C. Circuit's decision in Savoy, whether that's the Fourth Circuit's decision in Dan River, they reject precisely that kind of analysis on the merits. They say the fact that defendant makes a disclosure doesn't mean that disclosure is fully truthful and accurate. And that's what we've got going on here. Can I ask, I just want to ask you a peripheral question. With respect to your argument that any mootness determination that was made couldn't apply to those defendants who never filed the Schedule 13Ds, is there any law to support that specific position? For instance, is there a case that says all members of a group must file? So, yes. I mean, I think that's what Section 13D says, right, and the cases like Savoy and Dan River require each individual member to file. I think one of the things you're driving at, Judge Montecalvo, is has there ever been a case like this? No. No, right? This is really strange in that you've got what we view is essentially a hub-and-spoke agreement. You've got an admitted agreement around the stockholder group as to Fund 4. You've got the same people who have filed that stockholder group letter kind of fanned out across all these other funds. You know, I don't think conspiracy is a perfect analogy, but it's a pretty good one, right? We're talking about agreements. And normally, where you've got an agreement, then the presumption or the plausibility you get is that it applies across the board. And so what we know at the center of that hub is we've got Hawk and we've got Ocean Capital, and then we've got all these other people around them. And you have to question why, right? They first came together with an agreement, the stockholder group letter. There was no, you know, at that point, proposal by Hawk. Everyone who's interested, click a box and submit a petition. They all formed some sort of agreement because those letters were delivered together by First Southern and by Hawk. Then you go on beyond that. What do we know? Twelve other stockholder group signatories own other funds. We have a chart on pages 13 or 14 that plays out ten of them. Then Daniel and Rad, his company, come out and make more disclosures that they own across the other funds. Then what do we know on top, right? You've got the nomination notices and proxy contests on their heels. We've got proxy campaign materials that are uniform and treat all these funds the same way. So to come back to your question, no, I can't point directly to a case, but these are really extraordinary facts, right? Direct evidence as to one and then circumstantial evidence as to all is the way I would think about that. Counsel, can I turn you back to Judge Helpe's question and sort of putting aside your disagreement with the Southern District of New York, and it sounds like the Second Circuit, what further relief, let's just assume we reverse, you go back, you win, what further injunct, because you could only get injunctive relief. Correct. So what further injunctive relief would you be asking for at the end of the day? Let me for a second, if I could bifurcate your question, Judge Rickleman, because I think it's important here, right? The district court dismissed on mootness grounds as to 13 and as to 14. That's unprecedented, right? No 14 claim has ever been dismissed for mootness. I think it's easiest to start with 14. Like if you look at American insured mortgage, Southern District case, that then-judge later, A.G. Mukasey decided. Can you just tell me very practically what would you want the court to do? Yeah, in that case, Judge Mukasey ordered defendants to send letters to the individual saying, our prior statements were misleading. The court has required us to do this. Like that's the classic relief in a Section 14 case. I guess my question is to follow up. There have been elections already held. Oh, I'm sorry. For three of the funds, correct?  So again, this litigation is going to take two to three years. Just very, don't quote cases. What would you want the court to do in terms of injunctive relief? That would make a difference. Yes, understood. I'm sorry for misinterpreting your question, Judge Rickleman. The classic relief here where you've got 13D violations or 14 violations is you void those elections. That's what the cases that we've relied on say. That's, frankly, what the cases that they cite in the bottom-side briefs say. Why don't you move for a preliminary injunction then? If your goal was to not have the elections take place, you could have moved for a P.I. You didn't. I read the cases to say it's fairly extraordinary to void elections after they've occurred, and it's really preferred that you raise these issues in a P.I. motion. So I would quibble a bit with the obligation on us to seek a P.I. I mean, if you look at some of the other cases, they involve similar calendars between when the violation occurs and when the claims are brought. And here we viewed all along as it being a meaningful remedy at the end of the day. We didn't need the preliminary relief. The elections would be null and void so we could get that. I think the question equally applies to the other side about why they didn't seek preliminary relief if they wanted these folks seated, and I think that goes hand-in-hand with the mootness problem, Your Honor. The other side has said that our view of mootness puts a thumb on the scale. It doesn't, right? Their view of mootness vitiates any 13D or 14 claim, whereas the court has all the usual avenues to get to ruling expeditiously. And I'd point you to Your Honor's point about this taking years. My partner below, which I think 82, maybe it's 84, said they were looking to do this on 120 days of discovery. I mean, that's the way this case would be done in Delaware. You bring one of these claims and you're off to the races. All of these other claims that we're talking about, right, Dan River, Savoy, et cetera, were on expedited evidentiary records and they got to judgments quite quickly. So I don't think there's an unclean hands problem or a problem, latches problem with the way we litigated the case at all. We're looking to push to a ruling. It's not that I'm suggesting there's a latches problem, but you filed or you amended your complaint a day before an election. In the original complaint, I think there was more time. And if what you're saying is the ultimate relief you'd be asking for, and that's why this case is in moot, is to void the elections that have occurred, to get a permanent injunction voiding them, wouldn't you have to show more than just the 13D was inaccurate? Wouldn't you have to show where the proxy solicitation materials weren't accurate? Wouldn't you have to show that it actually changed? No. No, Your Honor. Why not? I mean, I read Lampert to come out exactly the other way, right, and say that you've got irreparable harm where there's been an illegal 13D or an illegal vote. And so that principle would apply and get you to a permanent injunction as well. I view what the SEC did in Savoy as being of a kind with that, right? The SEC got permanent relief in that case on the same grounds that they had pursued the underlying merits claims. And then to finish the point off, Judge Rickleman, right, even if you were to say that there were a problem as to some of these elections, right, that doesn't speak to all the funds, right? In many of these cases there are, and this goes back to where I was going before, sometimes the courts award preliminary injunctive relief, forbidding plaintiffs or, excuse me, defendants from making further statements along these lines. Corrective disclosures would be another. And then, frankly, true disclosures. We want to know who's in these groups, what they hold, and that's what shareholders and plaintiffs are entitled to. Okay. Counsel, you're going to have four minutes for rebuttal, so let's hear then from Counsel Charlson. Please do introduce yourself on the record to begin. Yes, thank you. Good morning, Your Honor. May it please the Court, I'm Michael Charlson, Vincent and Elkins, and I'm counsel to the Ocean Capital Appalese. Well, we've heard a lot of interesting information from my opponent here, and I will agree with him on exactly one point. This is an extraordinary case. What the funds have asked this Court to do, stripped to its essence, is to put its imprimatur on the nullification and overwhelming and repeated nullification of the fundamental shareholder right to vote for directors. They're asking the Court to basically take a position that a shareholder vote can be held in abeyance for an indefinite period of time simply by making allegations that something was improper in the disclosure statements that accompanied the election. Without doing anything else, that's enough, unless, of course, you lie and adopt all of the disclosures in the form that the funds would demand. Here we have three funds out of nine where a quorum has been reached. And dating back now to March 2022, so much for the expedited proceedings that my opponents say would have ensued, the worst performance, worst performance by Ocean Capital's nominees was a three-to-one margin of victory. And in the case of Tax-Free Fund 1, the margin was 37-to-1. That's a 97 percent vote by the stockholders for change. Has there been any change? There has been none. Not one director elected has been seated. And what do we have to support the notion that there's this rampant fraud? Nothing, absolutely nothing. There's the May 2021 letter which relates to one fund where quorum has never been reached and so is not one of the funds for which the court entered an injunction saying seat these people. The one letter predated any proxy contest by months and was nothing more than a communication by stockholders with the board asking it to consider an additional investment objective. And the Securities and Exchange Commission has come out with guidance which it says is not changing the law, it's simply explaining the law. In November of last year saying that when stockholders merely communicate with the board about their wishes, that is not enough to form a group. Let me ask you something I'm a little confused about. Did Ocean Capital only amend its Schedule 14-A filings or did it also amend its 13-D filings? It amended both, Your Honor, but primarily it amended the 14-A filings to meet some of the alleged incomplete disclosures that were the subject of the fund's complaints. Okay, but both, you're saying? Yes, and indeed, I'll just make a point that we keep hearing so much about Ethan Daniel who was a nominee for TFF1 and the fact that he was associated with RAD Investments. You know, to read, to listen to the rhetoric and read the briefs, you would think that there were no 13-D filings at all, but there were. And in the 13-D filing relating to TFF1, it clearly stated that Mr. Daniel was a member of the group and it clearly disclosed RAD's holdings, clearly did so. And later, when he was nominated in subsequent years for TFF1 and TFF6, the same thing happened. This is not a case of nondisclosure where everybody is in the dark. And indeed, one of the things that's really critical, I think, for the Court to focus on is the tautological nature of what the funds are asking for. They say, oh, well, there are all these defendants for whom no 13-D was ever filed. Well, there's no obligation to file a 13-D unless you're a member of a group. And so in that way, they kind of have this circular notion that, well, we allege they're part of a group, so we ought to be able to go out there and conduct discovery, expedited or otherwise, in derogation of the rules that are promulgated by Congress under the Private Securities Litigation Reform Act and nose around, see what we can find, see how we can delay. And delay is the entire game here. That is the game. Let's let the clock run out on the three-year terms for which these people are being elected. And we're in the 30 months after the Critter 1 election of March 2022. So, you know, that's not a fantastic notion. Now, I'd like to focus on the primary reason why this court should affirm the judgment of the district court. The court dismissed the claim under 12b-6. And that is the way the court should consider it. I mean, I think the court below got it right across the board, including on mootness, and I'm happy to address mootness. But the primary problem with the funds complaint is that it does not state a claim that passes muster under the Private Securities Litigation Reform Act, which requires under Section 21d of the 34 Act that if they allege false or misleading statements, they have to specify what was false and why. Here, the most they come up with is this May 2021 letter. And then they spin that out, and, oh, there's this broad conspiracy. You know, none of it is alleged. There's nothing in the complaint that alleges any of that. What they allege is that some stockholders signed a letter relating to one fund. So you'd have to ignore the fact that there's issuer-specific rules on the Williams Act. You have to ignore the fact, as we go further into the arguments about relief that's available, that, you know, the mere fact of a violation of disclosure obligations under the Williams Act or under the proxy rules is not by itself sufficient to support injunctive relief. It is not. And Ron Doe, the Supreme Court's holding, says that specifically, as does this Court's decision in Hibernia Savings Bank, which isn't even cited in the opening brief from the funds. These elections, the allegations about group require a focus on what is a group. A group is an agreement, an agreement entered into by two or more people for the purpose of voting, buying, selling, or holding equity securities. Counsel, why isn't the letter enough to meet their requirements in terms of alleging their claims to show group? Because I know you've argued that, you know, not all of the 13 signatories own all of the funds, but most of them own three or more funds. And they did all sign on to a letter saying that they wanted one particular fund to consider changing its objective to essentially liquidate and return assets. So why is that not enough, that the fact that that group of people were all on the same page about that objective for one fund, and most of them own shares in three or more funds? Why is that not enough for a complaint? Actually, I don't think most of them own three or more funds, Your Honor, with respect. But that's all alleged in their complaint. Do you know how many of the signatories own three or more funds? Well, it just so happens, Your Honor, that I have that right here. Actually, I don't have it right here. Well, you can take a moment to find it. Thank you. While I do that, however, I will note that the basic problem with what you've said is that the letter seeking the board's consideration of a new additional objective is nothing more than a communication with management about something they ought to consider. It doesn't reflect an agreement. It may reflect that people agree about that particular issue, but it doesn't reflect an agreement for the purpose of voting, holding, acquiring, or selling equity securities. Can you explain to me why? Because it seems to me, again, in a common sense way, that it would reflect an agreement that if a vote came up to liquidate the fund, that those people would all vote to liquidate it. So what in your view is the missing link? There are no allegations that these people did anything beyond write a letter. There's no involvement with any proxy contest, certainly none that comes close to anything other than the Pritifor Fund, which, as I indicated, is not one of the three funds that achieved for them. All they did was sign a letter. Somebody said, hey, you know, we think that the funds have been performing abysmally, and incidentally they have, and I'm going to come back to that in just a second, and we would like to propose something. And the charter provisions of these funds require that to make a proposal, you have to have 20% of the stockholders. So you go out and recruit a bunch of people. It's not much different than, you know, I live in Oakland, California. We have some issues in Oakland, California. Some of my friends are involved with politics in Oakland, California, and they say, hey, you know, we're thinking about how to make some changes in the police department. Do you agree? Yeah, I agree that would be a good idea. I might even vote for it, but I haven't committed to doing anything. All I've said is, yeah, that sounds like something worth doing, worth considering. And that's all that happened here. They aren't alleged to have done anything else after May 2021, nothing, with the exception of Ethan Daniel, who later became a nominee and was disclosed as such, and his investment funds holdings were properly disclosed. But because of that, there's no allegation that meets the high standard of the much less that there is a proxy violation. And I do want to just mention that, you know, with respect to this notion of liquidation, liquidation is the big bogeyman. The funds are very worried about liquidation. To read their briefing, you would believe that if Ocean Capital's nominees were seated, A, liquidation would follow as of course, and B, it would mean that all of these poor, elderly stockholders who have been reliant on distributions from these funds for all these years for their income would be up the creek. Both of those propositions are completely wrong. Liquidation would not be allowed automatically. It would require a super majority vote of the outstanding shares of the fund. Counsel, I'm not sure that that's their argument. What they're saying is that the proxy materials didn't accurately convey the intent of the nominees and the people supporting them about liquidation. So I think the question is really, if Ocean Capital's goal was liquidation and only liquidation, then do you agree that the proxy materials would be misleading, since they say it's just one possible option they would consider? I don't agree. Why not? Because that requires that because of the mere fact of an allegation, nothing more. Where are the facts to suggest that liquidation and only liquidation is the way Ocean Capital was viewing the world? Their nominees would have fiduciary obligations to the funds, and if liquidation were not the appropriate way to enhance shareholder value, they might not vote for liquidation. They might not even seek liquidation. They're not even privy to all the information that directors of these funds would have because they haven't been seated. And so I wouldn't concede that point at all, Your Honor. They have to offer something more than just a vague assertion. They want liquidation. And, you know, incidentally, liquidation is not necessarily a bad thing. Today, if these funds were to liquidate and return the money to the stockholders, which is what would happen, it's not like Ocean Capital would pocket the money. They could reinvest those funds in T-bills and make twice as much. Okay, so it's not like these poor elderly people are going to be up the creek. It's a ridiculous assertion. More than that, Your Honor, the notion that a violation of Section 13B without more is enough to support injunctive relief is not supported by the law. Rondeau, Hibernia Bank, even the Lampert case, they don't stand for that proposition. You still have to show irreparable harm. And it's in this respect that the Nano case is somewhat different from the kinds of mootness discussions that my learned opponent is referring to. It's not talking about whether or not there's an Article III case in controversy problem. It's talking about whether or not the court can fashion some reasonable kind of relief in the face of a violation that's actually proven. And they don't even get to the point of being able to prove it until they get over the hurdle of actually stating a claim. And they don't do that because all they offer is a bunch of vague assertions made collectively across nine different funds where the only thing they really have is this May 2021 letter and a website that uses the word coalition. And that's just not enough. There are no facts. It's certainly not enough to put a corporate challenger to a point where they cannot get their election certified for years. May I just finish that point? Thank you, Your Honor. And in that regard, Your Honor, we note that the PSLRA standard is not one of mere plausibility. It is much higher. I don't even think they've alleged plausibly that there's a claim here. But if they have, they certainly haven't alleged it with the kind of particularity that the PSLRA mandates. With that, I'll be happy to answer anything else. Thank you, Counsel. Thank you. Four minutes for rebuttal. Counsel, Joyce. Again, Eamon Joyce on behalf of the funds. I want to, I think, make three quick points. The first is on unmovedness. I just want us to keep our eye on the ball. Their view is really that there's never a Section 13 or 14 claim where you deny the allegation. That's what my friend said. If defendants deny they're in a group, that's it. Game over. That cannot be the law. Point two, Judge Rickleman, on that score, let me briefly address. One other defendant owns four. Four others own three. Two others own two. And five others own one. And that's in addition to fund four. What they're saying about groups and disclosures makes no sense. Put aside denial. You heard them say today, right, that they've disclosed groups. Their 13 Ds do not tick any box. 2A on each of those 13 Ds, you'll see this, J941, 943, 945, 947, all ask the question, is there a group? Not a single one ticks it. But don't they identify themselves as a group in the narrative? Let me go there. I think that's my second point. They list among joint filers individuals who have no shares. My friend told you today. And he won on this position below. It's addendum 8. If you don't own shares, you can't be part of a group. They disclose multiples like that. Rosenthal, no shares. Iscardo, no shares. Kangen, no shares. What about the rest of his defendants? Point three. Contrary to what they're saying about groups, this is all doublespeak, brief at 10, right? These filings, in fact, disclose groups consisting of Ocean Capital, its principal, Hawk, and the director nominees. That's what you heard him say today. 29, Daniel was indisputably included in Ocean Capital Schedule 13D group disclosures. But they can't keep that story straight for a page or two of their brief. Brief at 28. The letter is insufficient to allege that the signatory appellees, which include Rad, which include Daniel, are part of a group. Brief at 30. Discussing 643. Ocean Capital supplemental disclosures stated that Ocean Capital, Hawk, and the director nominees have never entered and have no intention to enter any agreement. They say shareholders are going to figure that out? Shareholders are going to figure out these facts and adjudicate them? No. This is Dan River. This is Savoy. This is Lampert. You can't say four different things and have partial disclosures and then say, hey, we've denied everything, so it's all moot, or we've denied everything, so there's no claim. This is a classic 13D claim, and it's a classic Section 14 claim. It's neither moot nor does it fail on the merits. The last thing I'll say is about the election results. I mean, this is really rich, right? We have no idea of the votes that came in. Which of them are from defendants or controlled by defendants? And moreover, we have no idea what those election results would look like if they had actually ran a proxy campaign that looks like the proxy campaign that, in their view, would be true. Why, if there's no group? Why, if there's no stockholder group? Why, if there's no coalition? Don't Hawk and Ocean Capital just play it straight. Don't launch a website under the coalition. Launch a website that says OceanHackandHawk.com. We are Act 22 beneficiaries, and we think you should vote for us and our directors. Maybe those elections come out the same way, but I think what they did begs the question of why they didn't do that. They wanted this to seem not only like a bandwagon, but they wanted it to seem like a bandwagon of people who didn't look like them, that weren't wealthy folks from the mainland who were Act 22 beneficiaries, but were instead the common shareholders of these funds, pensioners. And that's just not the facts here. We've stated a claim, and nothing has moved. Thank you. Let me ask you one quick procedural matter very quickly. Yes, Judge. The opinion below is a magistrate judge report recommendation was adopted by the district court without further explanation. It said the district court had reviewed independently the record and therefore adopted the recommendation. So my question to you is that I think there's nothing aside from the magistrate judge recommendation. That, in essence, is what you're appealing, everything. There's nothing, any other error or anything else the district court may have done. That's absolutely right, Your Honor. Okay. Thank you very much. Thank you. Court is adjourned until tomorrow, 9.30 a.m.